of America, Appellant. Mr. Gunter for the Appellant, Mr. Himmelfarb for the Appellee. Good morning. I'm David Gunter from the Department of Justice here on behalf of the United States. I'll argue for about 13 minutes and with permission save two for rebuttal. During the two-week trial of this case, the district court found that the United States is equitably responsible for no more than 30% of Lockheed's cleanup costs at the sites at issue. It also found that the United States has already paid 72% of those costs, with more to come. As a matter of law, these two findings mean that the United States can't be required under CERCLA to continue to pay Lockheed for its cleanup costs, and that's the case for two reasons. First, the United States compensated Lockheed for its cleanup costs under the Federal Acquisition Regulation. The contracts between the United States and Lockheed don't say anything about environmental costs at discontinued sites. Lockheed's theory is that it's the Federal Acquisition Regulations that give it the right to charge those costs to its United States agency customers through contract. As a result, CERCLA Section 114 bars Lockheed from continuing to seek those costs again in a CERCLA action. Second, equitable recovery under CERCLA is only available for a party that has paid more than its fair share of a common cost. And at these sites, Lockheed hasn't paid more than its fair share. The United States has paid the majority of the costs and more than its own equitable share. Despite this, the district court ordered the United States to pay tens of millions of dollars more in future costs, which will increase the government's equitable share of those costs, I'm sorry, effective share of those costs, and decrease Lockheed's effective share even further. This is the result of two critical errors by the district court, which I'll address this morning, both of which require reversal. The district court's first error was in its application of Section 114b of CERCLA, which provides that a party that has been compensated for its response costs pursuant to state or federal law can't recover those response costs again in a cost recovery action under CERCLA. What this does is it puts the party seeking its costs in the driver's seat. It can seek to recover first under CERCLA, first under state law, under federal regulations, but what it can't do is seek to recover the same cost twice by two different means, especially from the same party. Once the party that has incurred costs makes that choice, Section 114b protects other parties from having to pay twice. This is evident, and the government's argument begins with the text of Section 114b, which imposes two conditions for the bar on further CERCLA recovery to apply. First, the party seeking costs has to have been previously compensated for those costs. CERCLA uses broad language here, removal costs or damages or claims, and the district court made specific findings that that condition is met here, that Lockheed has been compensated for more than 70 percent of its costs of response at these sites. The other condition in this section— Pursuant to law or contract? Our position is that that compensation has taken place pursuant to law. It's true that there are contracts in place here, and without those contracts there would be no payment obligation, but it's also true that without the federal acquisition regulation and its provision for the payment of indirect costs, there would be no payment obligation. Is the government required to pay the indirect costs if Lockheed puts them in? Under the settlement agreement at issue here? No, under FAR. That was a disputed issue. So the government doesn't necessarily agree that indirect costs, that FAR requires them to pay indirect costs? Let me try and be precise. We do have to pay indirect costs. The question is whether environmental response costs at discontinued sites qualify for the definition of indirect costs. And I thought the DOSA settled that, the Discontinued Operations Settlement Agreement, that they do qualify, and you agree to that, and that's not at issue here. That's right, and that's Lockheed's own theory. Lockheed came to the government and wanted to charge its agency customers more so that it could obtain payment for those costs. On non-discontinued sites? Are all circular sites going to be discontinued? No, for instance, if there's a circle site where Lockheed is still doing work to fulfill government contracts. Is the government required to pay their cleanup costs? Yes, at sites like that, because costs at those sites are allocable to the contracts that are being performed at those sites. And the question with respect to discontinued was disputed. That's right. The question is, is there any existing current contract to which you can allocate costs that are incurred at discontinued? If it was disputed, how does it – I get the argument about if FAR requires you to pay it, but if it's only the settlement that requires you to pay it, how is it pursuant to law? Well, I think the court should view that as any other settlement agreement. If we had simply entered into a settlement agreement, if Lockheed had threatened to sue over circular cost recovery and we entered into a settlement agreement to settle that claim and pay pursuant to that, then we wouldn't normally describe the United States payment obligation as pursuant to the settlement agreement only. It's also pursuant to circular. And in fact, Lockheed – Why is it pursuant to circular? Because it's in settlement of a legal claim that arises under circular. So we're trying to avoid the litigation risk. Well, what if it was just a contract agreement? There was no FAR here at all and the government just said, you know, we agree as a matter of contract to pay your cleanup costs. Would that be pursuant to law? No. I would not say that that's pursuant to law. So why isn't a settlement where both sides dispute whether it's covered or not and they've just reached a settlement agreement, how does the settlement agreement become law? Because the alternative to reaching that agreement would have been to go to court under the Contract Disputes Act. You could have done that. You could have done that. You didn't. Instead, we have a settlement. So maybe we have a very narrow case here that won't govern too many more cases and the government will know that settlement agreement itself isn't law. So I'm not saying that's how it will come out, but I'm just wondering why, just because you could have done something else and you didn't, why that makes it law. Well, it makes it law because of how pervasive the federal acquisition regulation is in the interpretation of government contracts. And so as a result of that, even Lockheed says that it is recovering its costs from the government, not pursuant to the settlement agreement that's at issue here, but pursuant to U.S. government regulation because in their view it's the U.S. government regulation that allows them to charge these costs. What if it was, what about, these are, you're talking about a cost-plus contract, right? Some of them are cost-plus and some of them are fixed-price. Well, the only ones in which you're required to pay indirect costs are cost-plus contracts, right? Those are the only ones in which the cost- The FAR says anything at all, right? No, I think that even with respect to fixed-price contracts, the FAR allows Lockheed to incorporate the price of its cleanup, the anticipated price of its cleanup as overhead into the cost that will be charged in a fixed-price contract. But if it's a fixed price, you just agree on a particular amount. If somebody else comes in a lower amount and therefore a lower profit, you take that. Is that right? Yes, but I think that in justifying its bid, Lockheed would have to say that there are environmental costs that we're going to charge here. And, in fact, the experts that the district court credited at trial looked at fixed-price contracts and identified a percentage of costs that are attributable to those fixed-price contracts. So in the normal case, it might be hard to sort all that out. But here we actually have fact findings by the district court and expert testimony to try and identify what increment of those fixed-price contract prices are attributable to the response costs. So I have a little bit of a difficulty with your 114B argument. Maybe you can help me out. If we were to agree with your reading, wouldn't it be the case that in a situation in which all of the potentially responsible parties are not the United States government, Lockheed and other parties, but the current and, you know, since the cleanup started, only contracting party with Lockheed is the government, that you could have a situation in which costs, the cleanup costs were passed through as overhead to the government under the fall and, therefore, paid pursuant to federal law under your theory. And then when Lockheed turns around in the surplus suit and tries to recover from the potentially responsible parties, that would be barred by your reading of 114B. Isn't that correct? That is possible. But let me explain why I think that's an unlikely situation, especially if this court clarifies the scope of section 114B. Lockheed's own argument is that it hurts its competitive position to charge those costs to its agency clients. We're not trying to stop Lockheed from recovering under surplus section 107. We simply say it can't recover under section 107 after having already recovered under its contracts. So in the situation that you described, Lockheed could certainly go after money from other PRPs first under surplus section 107 and see what it could get and then charge whatever it can't get, its own share, to its government contracts. In fact, it could get that money from the justice system. In fact, it would have to do that. If it wanted to ever recover from the potentially responsible parties, it could do that. But, I mean, notwithstanding the amicus brief, which talks about how competitive government contracting is, we all know that there are contracts. In fact, the rocket contracts here are probably not at all competitive. And so you've got a situation in which Lockheed is saying, well, I can just, you know, pass it through to the taxpayers and, you know, not be bothered with recovering from the PRPs through CERCLA litigation, or I can wait, go into CERCLA litigation with all the problems of proof that that involves. What are they going to do? They're going to pass it through to the taxpayers. So it seems to me for the United States government to be taking this position is a little bit perverse, given the purpose of CERCLA and given this kind of risk. In a situation where a government contractor can only recover from other private PRPs, you might be right. But certainly there are many situations in which the government is a PRP at a site that involves a government contractor. And the interpretation of Section 114B that we're advancing would protect the government in that situation. And I think, in fact, is more consistent with the purpose of Section 114B, which is to say that once you have recovered, you can't recover again. And can you spell out a little bit the treatment of future costs, assuming Lockheed prevails versus assuming you prevail? It's a little challenging to keep hold of why you all are in court, since everyone seems to agree that if the government pays the CERCLA recovery, that that will be credited into the DSCOPS pool or credited against environmental liabilities. And so they want the money to come in just so they can send it out again, and you don't want to pay the money just so you can receive the benefit of it again. Could you spell out for us a little bit why this matters so much, and particularly with respect to post-judgment costs? Sure. The principal problem is that the crediting mechanism is incomplete. So the United States will pay 100 percent of a CERCLA judgment. But when that CERCLA judgment goes into the pool as a credit, the United States will only benefit from it in the same proportion as it has business with Lockheed. Which is like 87 percent. It's higher than it was on the back end. Right. So this actually leads into the point about actual allocation. Despite that crediting mechanism, if the United States pays a CERCLA judgment here, its effective share of the cost is going to go up because it will pay 100 percent of a judgment, and Lockheed will only credit us back some of that. But that's not taking account of the fact that somehow the non-U.S. government contractors with Lockheed have, even though they're not responsible at all for the environmental harm, they've also been paying a share, and in fact a bigger share than the part that you anticipate will be deprived that the United States government will be deprived on the front end. That's right. But that's why it's important that this particular argument arises in the context of the equitable allocation, where the question is not the overall number of dollars we've paid or whether we'll be credited back the same amount as we were charged in contracts, but the question is, would our effective share increase, and has the share that we have already paid exceeded our share of the responsibility of the site? So even with the incomplete payment scheme that you're describing, we have still paid more than double our share. Well, wait a minute. I assume you don't take issue with the fact that the government has chosen to contract with Lockheed and is paying for Lockheed's own share of the environmental response in the form of environmental recovery costs being passed through in contracts. That's something that's the dosa. And so when you say you're paying more than your share, aren't you acting as if part of what you paid is not, in fact, that authorized payment for Lockheed's share? No. The entire payment that we've made so far is authorized, and we don't dispute that. In fact, we have a Section 113 contribution claim against Lockheed. We're not trying to recover the amount that we've paid to them in excess of our equitable share. But those obligations arise under contract. And the question that the district court was considering here is whether there's any additional obligation that CERCLA imposes. CERCLA imposes an additional obligation if a party has not yet paid its fair share. And it allows a party to recover if a party has paid more than its fair share. And the problem here is that Lockheed has not paid more than its fair share. Well, and you haven't paid all of your fair share. I mean, at ongoing costs, right? Isn't the remediation still happening? The remediation is still happening. But even if you look at how could you then have paid more than your share? There has to be some post-judgment and post-now cost. And so you haven't paid it all unless you're counting part of what you paid toward Lockheed's share as if that were going toward the government's share. You're right that I am basing that argument in part on what the shares are estimated to be in the future. And it's possible that if we stop paying Lockheed under contract, despite the existence of the DOSA, and if costs at the site balloon out of control beyond any estimate that the parties are currently making, then it's possible that the United States payment so far will eventually not meet our equitable share of at most 30 percent. But under the costs as they're estimated to occur in the future, we've paid more than 50 percent of all past and future estimated costs. But not more than 70 percent. And if you're accepting that you're going to ultimately, let's just say, let's put the other contracting parties out of the picture and just imagine that it's just you and Lockheed, 70 percent, 30 percent, ultimately you're going to pay 100 percent, presumably. You're going to pay the 70 percent amortized through contract recoveries, and you're going to pay the 30 percent, whether through the contracts or through CERCLA, or through both, you know, contract and then CERCLA. If you leave the other parties out of it entirely, that's accurate. The problem is you can't leave the other parties out of it entirely because they will receive some of the CERCLA judgment that the United States pays. They're ending up on the short end of the stick, though, not the other way around, given the way I understand the numbers are going. Well, that's true if they have made the same deal with Lockheed to pay indirect costs as the United States has. It may be, however, that Lockheed is allocating some indirect costs, the 13 percent slice, to those customers who have not agreed to pay indirect costs, and Lockheed is simply eating those costs. We don't know what's going on with those third parties. All we know is what's going on with the United States, and that will be an incomplete crediting. I thought they said in the record that they were paying. I mean, we can hear from them, but that they were charging everyone across the board in overhead costs. We'll ask them. Do we need to decide both issues? You suggest somewhere that we do, and I'm not sure that I follow that. In my view, you do need to decide both issues because there are factual scenarios that could occur in the future that will require the United States to pay future response costs that would be resolved by a decision on Section 114. Do you mean in other cases or in this case? Both in this case, theoretically, although not likely because of the estimates of costs that we currently have. On the 114B issue, your brief is a little ambiguous because it says that under 114B, you can recover for those that have already been compensated, so those would be past costs. And through the, although the judge didn't give it to you on the meaning of 114B, the judge gave it to you on the equitable tolling. So in a way, it's kind of moot with respect to past costs. Is that right or wrong? I think it's wrong, Judge Garland, because we will be. I don't mean moot in the legal sense. I mean moot in the sense that you're getting everything that you wanted with respect to past costs. Right. The district court's judgment on future costs will require us to pay future response costs, even if those costs have already been credited, have already been passed on to U.S. government agencies through the pool. So let's say in 2017, Lockheed incurs response costs, charges them to the pool, and then seeks circle recovery from us. We would consider that to be a situation in which Section 114B bars Lockheed's circle claim, even though it's with respect to future costs, at least from the date of today's argument. I think it's more true that if the court agrees with us entirely on the Section 114, I'm sorry, on the Section 113 equitable issue and says that we don't have to pay any future costs because those costs have already been paid as a matter of equity, then it's less necessary for the court to decide the Section 114B issue. What if we decided the 114B issue in your favor? Would there be any equitable allocation after that? Yes, because Lockheed could seek only its costs that have been previously compensated pursuant to the federal acquisition regulation, and there's a slice of costs that will not be compensated pursuant to federal acquisition regulation. Is that clear? Is that clear? So what happens from, I don't know whether it's judgment forward, Presumably, now that you know the allocation is between Lockheed and the federal government, when bills come due, they just charge the government directly for the 30%. They're not putting those liabilities into the disk stop pool and then amortizing them out five years, are they? Well, I'm glad you asked because that's critical. They are doing both. They will put it into the pool. They will charge U.S. government contracts the price of those response costs, and they will also make a CERCLA claim for those same response costs. The reason I say that's okay is because then they will credit the CERCLA judgment back to the pool. But as I've tried to explain this morning, that crediting would be incomplete. Lockheed would keep some of that money. It would also give discounts to its other customers using some of that money, and the overall cost to the United States would go up. So Lockheed is saying our theory benefits government agencies because it will lower the price of their contracts. I don't understand that. It seems like once now that you have a CERCLA judgment that any response costs incurred from now on, they just, you know, toad it up and send you 30% of the bill, done. And this whole idea of using the disk stop pool, that's for prompt, you know, them having to have a reliable way to recover costs given that they didn't know if they were going to be holding the bag completely, and that's something you all approved. So it seems to me the treatment is different with respect to future ongoing. And again, we'll hear from Lockheed on this. Right. And I agree that the system you're describing under which Lockheed can choose to charge its costs under contract or under CERCLA is a more equitable system. I'm not even saying choose. I'm saying from once they get the CERCLA judgment, the whole need for charging through under contract is gone. And they just charge. They don't choose. They charge you the 30%. And why wouldn't that be the way things are going? Is that not the way they've been going? It should be. And it hasn't been? The need for charging government contracts would be gone. But Lockheed's theory is that it can charge contracts even after having a CERCLA judgment. Except on prior. I mean, the pre-judgment incurred response costs. Well, because of the district court's equitable allocation, Lockheed won't get any past costs. Right. But if the court had awarded past costs, then Lockheed would happily demand payment from the United States, again under CERCLA, even though it's already been paid under contracts. And for future costs, that's what's going to happen. District court didn't award past costs. That's right. And so that mitigates the inequity of it. But it's still inequitable with respect to future costs, which Lockheed will recover under its contracts and still charge against the United States at a 30% rate because of the district court's equitable allocation. Well, you know that both district court judges chastise you politely for not complaining about a scheme that you essentially put into place. What happened? How did you change your minds? This is essentially your scheme. It's our scheme and Lockheed's scheme. Lockheed is the party that wanted to charge these costs. I mean, you had the regulations. There was a statute. You essentially endorsed this arrangement, which you're fighting like crazy about. No. It's really perplexing to read this record. This is your scheme, and now you want to walk away from it. What in the interim happened to cause you to just don't like the deal anymore? But it's a deal you put in place. The element of recovering costs through government contracts is something that we did agree to put in place at Lockheed's request in the settlement agreement. But in that settlement agreement, we reserved our circle of defenses just as Lockheed reserved its circle of claims. And now we're trying to assert those defenses here in this litigation. The district court's error was to say that by reserving those defenses in the settlement agreement, we somehow gave them up and can no longer complain about them here. Meanwhile, Lockheed in the settlement agreement fought for the right to charge its government customers higher contract prices to recover these costs. And it's here before this court complaining about that choice, saying that that hurts it competitively and that the court should fix it. But in fact... Go ahead. I'm sorry. Between these two parties, Lockheed is the one who knew and had clear understanding of the consequences of that choice at the time of the settlement agreement, whereas the United States thought that it would be able to assert these circle of defenses later on and has been barred from doing so by the district court. Two questions. Can you identify any case in which a government contract or settlement agreement like this, not a consent decree but a settlement agreement, was deemed to be federal law, whether under CERCLA or otherwise? The best case. There are no prior cases like this one that came out in the government's favor. The only prior case like this one is the Raytheon case, which was decided under the theory that Section 114B refers only to state mini-CERCLAs, statutes that are like CERCLA but have been passed by the states. And even Judge Robertson walked back from that theory in his reconsideration decision. So this is really a case of first impression in our view. But it's a case that will have consequences. There's currently a case involving Lockheed at the Great Neck site under the settlement agreement at issue here that's pending before Judge Leon in the district court, and he has not yet ruled on Section 114B's summary judgment motion. So there's a real benefit to the court deciding that issue here. I have a second question about, so you're arguing that what you've already paid in overhead costs pursuant to contract essentially should prevent you from having to pay a CERCLA recovery for post-judgment incurred cleanup costs. Is that right? We're arguing that the full amount of our past payments should be credited against any CERCLA liability, whether it's for past costs or future costs. All right. You don't have a past cost liability, right? So you're talking about future costs. And I have trouble with, in 114B, the reference to the same costs, that these aren't the same costs. You're trying to – it really becomes not a 114B argument but an equitable argument that you paid more than your share in the past, and that should relieve you from paying up to the 30 percent going forward. That's accurate. Our section 114B argument applies only to costs that have already passed through the pool or that will pass through the pool. If Lockheed hasn't charged us those costs yet in the pool, then we would say that it's only our equitable argument that prevents us from having to pay again. But with respect to both past and future costs, the district court had to answer two questions. What does each party share, and what has each party already paid?  In fact, Lockheed says the government won this case at trial, and yet we have a judgment that will require us to pay tens of millions of dollars more in future costs, despite already having paid our share. That you'll then get back and you just don't like – so is your only concern that you're getting it back in the region of 87 percent rather than 100 percent? If there weren't that crediting to other contractors, you would be fine with this? On the equitable side, it would have been within the district court's equitable discretion to take account of that if it was 100 percent recovery. Our view under section 114B is that we should really only have to pay once. But if we paid twice and were fully credited, I don't think that would cause an equitable problem. The problem here is that that's not what's going to happen. How can that be – I mean, I'm asking a question I already asked, but how can that be your objection when, in fact, you lucked out because they were also charging private or non-U.S. government contractors the overhead? And so you weren't paying – you were paying 70-something percent, if I'm reading the record correctly. When you say we lucked out, we benefited from the deal that we struck in the DOSA and that Lockheed agreed to. So, true, we have not paid 100 percent of those costs. But recall that the obligation to pay those costs, to the extent it doesn't arise under CERCLA, is only a matter of contract. And we have fully paid the amount that we agreed to pay in those contracts. And the question here is whether CERCLA allows Lockheed to recover anything else above what the United States agreed to pay. And they don't dispute the principle of equitable allocation that we cite in our brief, that CERCLA applies and that equitable allocation is available for a party that has paid more than its fair share of costs. And that's simply not the case here with respect to Lockheed. They've paid less than their fair share. Do you – is there any legislative history you could point to that supports your reading of 114B? Neither of the parties cited any legislative history in the briefs, because it is unenlightening on this point, I would say. You can tell from Section 114A, the preemption section, that the primary concern of Congress in writing this language was in making sure that state mini-CERCLAs were not preempted. But then in Section 114B, they actually enacted language that was broader than that and referred to any costs or damages or claims. But aren't they also thinking about state tort law and or Federal Tort Claims Act or Clean Water Act, petroleum recovery, or, you know, other – I mean, there are other possible sources of recovery, no? There are other possible sources of recovery. And so the general thrust of Section 114B is that the party that incurs cleanup costs can choose. If there are multiple avenues to recovery of response costs, then the party that incurs those costs can choose which avenue it's going to take, but that choice forecloses other avenues. So that in the end, there's only a single recovery. Our problem under Section 114B is not necessarily double recovery, but just a second recovery. Section 114B doesn't say anything about crediting or realizing a benefit or what happens in future accounting. Right. No, I understand that. Okay. Unless the Court has further questions, we'll simply ask that the District Court be reversed. Thank you. Chief Judge Garland, and may it please the Court, the government's Section 114B theory is wrong for a variety of reasons, one of which Judge Pillard put her finger on, which is that if it were adopted, it would have consequences that Congress couldn't possibly have intended. In this case, the government happens to be both the customer and the PRP, the Potentially Responsible Party. But the government's theory would apply equally. There's no way it would not apply equally to a situation where the government was customer but not PRP, or conversely, where the government was PRP, not customer, or for that matter, where the government was neither. Well, not the latter, because the government as PRP but not customer, the payments between private customers wouldn't be pursuant to state and federal law. Well, we think this... Unless it was a state law. I mean, this gets to what we think is a flaw in the government's textual theory, which is that this covers payments for goods and services under contracts. And we think under the government's theory that would apply whether it's a government contract or any other company that is passing through its cleanup costs. Well, that's what I was asking about. Wouldn't it be your position that under FAR they have to pay this money? No, they don't. It's not required under FAR. It's authorized under FAR in the same way... Authorized in the sense that if you allocate... Forget about... I'd like to leave out the settlement and the sites that are over with. I want to... Continuing sites. With respect to those, if you allocate your cleanup costs in a cost-plus contract, doesn't the government then have to pay? Yes, because there are contracts between the parties in which the government has agreed to pay overhead. And they've agreed to pay. And FAR requires that indirect costs be paid, right? It doesn't require it in the sense that the parties aren't free to negotiate about whether they would pay, the circumstances in which they would pay. So in a cost-plus contract, the government could say, we're going to enter in a cost-plus contract, but we are not going to pay, and FAR doesn't require us to pay cleanup costs? Yes, absolutely. In the same way that all sorts of bodies of law that govern contracts authorize the parties to do something, and for that matter, sometimes require the parties to do something, we would say FAR doesn't require this, it just authorizes it. But even if it required it, the payments would still be pursuant to contracts in the same way that when you enter into I'm interested in the other side of this question. Your position is that the government can contract around the indirect cost provision of FAR. Is that right? Yes, I mean, in a way, it has done that here in the DOSA. I mean, the parties agreed that certain discontinued operation costs would not be paid. They agreed that they would be amortized over five years. That's just because the parties agreed to it. And if you want to talk about the FAR, I think one of the provisions that is most telling here is Section 16.301.1, which is on page 15 of the statutory appendix in the amicus brief. It's called description, and what it's a description of is cost reimbursement contracts. The first sentence says, cost reimbursement types of contracts provide for payment of allowable incurred costs, which include direct and indirect costs, to the extent prescribed in the contract. So the FAR itself recognizes that. Can you tell me that page again? That's page 15 of the statutory appendix in the amicus brief. I mean, your theory is that the FAR merely confirms that it's not unlawful for the government to agree to it. That's absolutely right. It allows the government to do it. It allows the government to pay it. It allows contractors to charge it. But when it is charged and when it is paid, it is pursuant to contract, not pursuant to law. So that's what it says. Even the district judge in the first opinion said it was pursuant to FAR. He used those words, pursuant to FAR. Well, I don't think he used them. I'm not sure what that means. I'm just reading you from JA31. The government pays its contractors in accordance with the Byzantine set of rules known as the FAR. Pursuant to the FAR, the government pays contractors their direct and their indirect costs, plus a profit. Use the words pursuant. Right. I think, Chief Judge Garland, I think he used that, in fairness, in his statement of facts. I don't think he was focusing on this precise question there. Ultimately, of course, Judge Robertson, in denying the motion. I understand. But what I'm saying is the way ordinary, one way you can tell how ordinary people talk is to see how ordinary people talk. Not that the judge is ordinary. But the same with you. In the Lockheed accounting memorandum, it says amounts that have been included in our contracts pursuant to FAR Part 3, 31, cost principles. Same thing. You used pursuant to FAR. And how do we know Congress doesn't mean pursuant to in the same sense that both of you used it and in the same sense that the dictionary definition provided by the government uses it? Pursuant to meaning the same thing as in accordance with. Well, let me say a few things, if I could. First, as far as Judge Robertson is concerned, ultimately in denying the government's motion for reconsideration, he characterized this very argument as far-fetched and unpersuasive. He did, but that made me wonder what he thought of his first memorandum opinion. Right. He used exactly those words. Right. I guess the second thing I would say is that even the government agrees that in the law, there is this fundamental distinction between contract and law. Supreme Court's decisions have made this clear. The government's position is that there is something different about government contracts. Our submission is that there isn't. The government's position seems to depend upon the idea. It's not entirely clear what the proper distinctions are. One of them is that, you know, the FAR is more detailed than other. Well, it's also that the government has to act with legal authorization. I mean, Congress enacts legislation pursuant to the Commerce Clause. It doesn't have to. It's not required to, but it does it pursuant to authority. And here, there was a question whether you could even get these kinds of costs from the government, which wouldn't be a question with a private party. They agree, they agree. But here, they need to be empowered to act, and so they acted pursuant to the FAR. I mean, that's why you had a dispute that you had to settle in the DOSA, no? But the government doesn't have to enter into contracts. No, but when it enters into contracts, it has to do so. If there's a question whether it's even legally authorized to pay for something that it's not getting in goods and services, it has to be pursuant to some authorization to take that on. I think you could say just the same thing about any contract. If somebody enters into an employment contract and is paid the minimum wage, I don't think most people employing ordinary English usage would say that that person is being paid pursuant to law. That person is being paid pursuant to contract. And I guess what I would say, to get back to where I started— If they're paid only the minimum wage, you wouldn't say they're being paid pursuant to law? I get it if they were being paid $10 more than the minimum wage. But if they're paid the minimum—if they were paid below the minimum wage, you would say they are not being paid pursuant to law, wouldn't you? I think you would say they're being paid pursuant to contract. There is a body of law that governs all contracts. The common law, the UCC, consumer contracts. If you buy a cell phone, there are lots of requirements in there that the seller has to comply with. There are limitations on what charges can be imposed, interest rates and the like. If you make a payment for a cell phone, I think most people would say you're paying for it pursuant to contract, not pursuant to law. And I guess the other thing I would say is this. To the extent that there's any doubt about what the words of the statute mean, this gets back to the point I started to make when I first stood up here and that Judge Pillard was making in her colloquy with my friend Mr. Gunther, which is that it just can't be right that if the government is contractor but not PRP, and just to take a hypothetical example, which is not at all fanciful or far-fetched, where every single one of the— No, we got that. And the government seems to say, OK, we'll take that. It's just the way the language falls out. That's what he said in response to Judge Pillard's question. Well, I mean, the government doesn't get to decide what Congress intended. The whole point of CERCLA is that it's the responsible parties that are supposed to be paying. If you have a situation where the contractor spends hundreds of millions of dollars on cleanup costs and passes those costs through to its government agency customers, and then, in fact, it's the company next door that's 100 percent responsible for the contamination, Congress could not have intended that government contractors, meaning taxpayers, are paying for the cleanup costs when company X next door should be paying that $100 million. Mr. Himelfarb, I had asked this of the government. I'd like to have your view as well. Has your client charged the non-U.S. government contractors at the same rate that it has charged the government in the prejudgment world for the cleanup costs? In other words, is the overhead, environmental cleanup overhead, been across the board? Yes, it gets charged to all customers, which is why the government's argument on this equitable point is wrong. And how has it been going since the district court allocation? Are they right that you're going to both continue to charge the disc ops? And do you bill them directly for the 30 percent? How's that going? What happened is that when Judge Hovell entered her judgment, the government became concerned about how it was going to pay going forward for future costs, and it filed a motion to alter amend the judgment, which ultimately resulted in a stipulated amended judgment. And the way things work going forward is that the costs are charged through contracts in the same way they were before, in the same way they always are, and the circle of judgment would get credited and amortized over five years. The way the circle of judgment gets paid is that, first, it doesn't get paid until there's a final judgment in this case, which hasn't happened yet. Lockheed Martin submits bills, claims for the circle of judgment every six months. The government's obligated to pay within four months. So I suppose it is theoretically possible, and it may actually be true, I don't know, that there are for future costs, meaning costs post-Judge Hovell's judgment last year, some of these costs get charged through contracts before there will ever be a circle of payment. But once the judgment in this case is final, then there won't be any more environmental liabilities on the government's 30 percent share going into the disc ops pool as liabilities. It would only be Lockheed Martin's 70 percent share that would continue to go into the pool and be charged out to customers. Right. I think that's right. But so far that hasn't happened because the judgment's not final? Although they're not challenging the allocation. Nobody's challenging 30 percent, 70 percent. So it's unclear to me why that isn't just being billed out contemporaneously. It is being billed out going forward. I thought the first thing you said, though, was that it's being charged to the disc ops pool. That's right. It's being billed out in the same way. It goes into the disc ops pool. The cleanup costs going forward, whether it's the 70 percent or so that Lockheed Martin's responsible for or the 30 percent that the government's responsible for, it goes into the pool. And then once the circle of judgment is ultimately paid, that will get credited into the pool. Are you talking about the – I'm not sure that I follow why any payment that Lockheed Martin is incurring for cleanup at the site after the date of the judgment would go into – that the government's 30 percent would go into the pool. It would seem to me it would just go straight to them and be charged to them. And the 70 percent, your 70 percent goes in. No? No. The entirety of the cleanup costs, no matter who's responsible for them, goes into the pool in the same way it did before. And it gets charged to Lockheed Martin's customers, whether government or non-government, in the same way. And once there's a circle of recovery, it gets charged into the pool in the same way it would have if there had been a circle of judgment for past costs. Can you tell me whether there's any authority requiring that credits be amortized over the five-year period? It was a little curious to me that if the government pays you a circle of judgment, that that would be credit over five years rather than just credit immediately upon receipt. No, that's just part of the agreement in the DOSA. The credits are amortized the same way the charges are. I didn't think any circle of judgment crediting was covered in the DOSA. Do you have, like, a paragraph site or a page site for that? There is a credits clause on page 572 of the Joint Appendix. General credits, right. Lockheed Martin will reimburse the United States for any such double recovery, is the way it's framed, of settled discontinued operation costs under government contract. But credit in the five years, is that spelled out there? Sorry? Crediting in the way that it's amortized over time? Yes. Your argument that the payment here is not pursuant to federal law, is there any other federal law other than the FAR that it could be pursuant to? Sure. What are you thinking? It could be the Clean Water Act. We cite a provision in our brief. I mean, that's the main one. Well, isn't principally the Clean Water Act supposed to be either, I mean, if it's petroleum. I mean, so it's really just the murky area where the petroleum products are mixed with other hazardous waste. Is that the only thing you're thinking of? No. I think it's possible that you could be liable under the Clean Water Act and CERCLA for contamination of water. I don't think the government takes issue with that. I think the main thing this is meant to cover is state CERCLA laws or common law. Common law addressing nuisance or trespass or damage to property. This is the whole point of Section 114B when it says pursuant to law. And as I say, to the extent that there's any question about what the words mean, it makes sense to interpret it the way we advocate because it would lead to these perverse consequences where responsible parties aren't paying for cleanup costs and customers that had absolutely nothing to do with the contamination are the ones who are paying for them. Could you say a little bit more about why this matters to Lockheed in light of the crediting reimbursement mechanisms that sort of cycle through? Well, it matters to Lockheed Martin for the same reason one would think it would matter to their customers. It doesn't want to have to be charging their customers for cleaning up environmental contamination. It wants to be able to charge them for the things they're actually buying. And, of course, when it has to charge more than it otherwise would, that's bad for Lockheed Martin. It affects its competitive position, and there are plenty of competitors in different areas that don't have any discontinued operations cleanup costs, and they're not passing them through, and they're able to charge less than Lockheed Martin is. So that's why it matters. And are the contracts with the nongovernment contractees also cost plus, or are they both? I think they could be either or, frankly, neither. I think generally they're a fixed price, but, of course, the costs of cleanup are passed through in the same way that any company, any profit-making company, passes through the costs of environmental cleanup just like any other overhead to its customers, which is another reason why we think 114B can't mean what the government says it means, because if it did, you know, General Motors, when it was selling cars to its customers and passing through its environmental cleanup costs, if it tried to recover from a PRP, then you would have the same possibility of the same defense. And the government says that that's different. This is on page 5 of their reply brief, I think, because the costs there for nongovernment contractors to use the government's formulation aren't identifiable. But I don't know where you get identifiability or the lack of it from this statute. It's a completely unprincipled distinction. Well, I may be a little strong about being unprincipled. When you contract with the government, you get audited, and the audit includes line items for what the costs are that are being attributed to the government, to the contract. If you make an agreement with a private party and for a fixed price, there's no auditing of your— as long as you only charge the fixed price, there's no auditing. That's the end of it, right? Right. I mean, that may be true, but I think everybody— because if you misstate on the audit, you go to jail, or you pay a negligence penalty depending on whether it's willful or not. You don't have that issue with respect to a private contract for a fixed price. Right. I guess what I would say is that it's no more or less true that a nongovernment contractor will nevertheless pass along— Well, that depends on the elasticity of the demand curve, whether it's passed on or not. To make a narrower point, it certainly could and will if it can. And then if there is a CERCLA action where that company is trying to recover from a PRP, if the government's position is right, you could imagine the PRP saying, you've already recovered, and there will be discovery, and those costs can try to be established through discovery. So whether there's an audit or not, they could be identifiable. In interpreting 114B in your brief, you talk a lot about what is anticipated to happen after the CERCLA recovery and the crediting back, but I do think the government has a pretty good point about that. It doesn't matter what's going to happen afterwards. You just look at whether the costs have been recovered pursuant to federal law, and if they have, then done. And so what's the authority for being able to look down the road and say, 114B should be read not to bar the CERCLA recovery because it's going to be credited back? That seems like more of an equitable argument to me than a statutory interpretation argument. Well, let me say a couple things about that, if I could. One is that, I mean, I think everybody agrees that what Section 114B ultimately is, what its purpose is, is to prevent double recovery. And if you have a crediting, it seems to us, there is no double recovery. So if there is no double recovery and the purpose of the provision, what the provision ultimately is, is a prohibition on double recovery, it seems odd to say that it would bar recovery when there is none. The other, I mean, to tie it to the text a little bit, there are actually three requirements in the provision. It has to be, the prior recovery has to be compensation for removal costs. It has to be pursuant to law. And then in the CERCLA case, you have to be receiving compensation. So the idea of crediting, I think, can be tied to that word. And if you credit, at least in the context of this statute, if you get a CERCLA judgment and then credit it back, you are not, in this context, receiving compensation. And then the last thing I would say is, you don't have to agree with us about that. You could agree with the government that crediting is completely irrelevant. They still have to satisfy those two other elements, which we say they can't do. And again, to the extent there's any doubt about that, we think it's appropriate to look at the consequences of their theory, which lead to results that we say completely undermine the purpose of CERCLA, which is to ensure that it's the responsible parties who are paying for cleanup costs, not parties who just happen to be customers of the entity that's doing the cleanup. Thank you. I expect the government is out of time. I'll give you another couple minutes. Thank you. There are just a couple of points that I'm interested in making during this rebuttal. And the first is to address this question of what is pursuant to contract and what is pursuant to law. I think a helpful place to look for this might be some of the other court of appeals cases that have addressed this, including Empire Health Choice in the Second Circuit and Reed v. Norfolk Southern in the Seventh Circuit, which draw a distinction between obligations that are freely assumed and obligations that are imposed as a matter of public policy. So the Federal Acquisition Regulation itself is intended to constrain the free choice of contracting officers so that they can only enter contracts that are consistent with the public policy of the United States. Well, your opponent's view is that you can contract out of this. If you don't want to pay them their cleanup costs, you can try to negotiate. Whoever has greater negotiating power can get out of it. Is that true? There are provisions in the Federal Acquisition Regulation that allow for deviation from the regulations, which has to be approved by senior agency officials. No, no, no, but it's not a deviation from the regulation to not include in a contract a term that you're permitted to include. Nothing requires that an allocable and allowable cost, in fact, be allowed and allocated, does it? Well, please keep in mind that the contracts that issue here don't say anything about environmental response costs at discontinued sites. They're about totally unrelated goods and services. But you're not obliged by the FAR to do what it is you're now contesting. The FAR does not compel this. Assume there was no contract. They couldn't come in and say to you under the FAR, you're required to do this. No, if the United States had no contracts with Lockheed, then Lockheed would not be able to do this. No, but if they enter into a cost-plus contract with Lockheed, does it or doesn't it have to include an agreement to pay indirect costs as part of a cost-plus? I think that with an appropriate deviation of approval, and if Lockheed agreed, the parties could contract around that, so there was no payment of indirect costs. But they wouldn't even need the deviation of approval. I don't follow that. I mean, indirect costs meaning overhead, you know, relating to that contract. But the whole reason you had a settlement agreement around the DOSA was because it wasn't clear that it was required. You were saying, okay, for these contracts, we're going to agree that part of overhead costs, part of the indirect costs is going to be these environmental costs, no? Yes, the purpose of the settlement agreement, the DOSA, was to explain how the federal acquisition regulations are going to apply at these sites. No, how the contract was going to be applied. Well, Judge Edwards, respectfully, I disagree. Because the contracts themselves – You didn't before say that you have to make this payment. I missed it. I didn't read it, and I missed it. The contracts say that the United States has to pay indirect costs, which is a standard contract term. The amicus brief identifies it on the first page as one of the fundamental principles of contracting. And so what the settlement agreement does is decide whether particular provisions of the federal acquisition regulation put these costs into that indirect cost term or exclude these costs from that indirect cost term. But either way, it's not what the contracts say. You're saying it's an interpretation of Section 31.202, the meaning of indirect costs? That's right. And for purposes of these sites, the government agreed to accept Lockheed's interpretation of the federal acquisition regulations, and that's what leads Lockheed to be able to charge these costs. As part of your agreement, as part of your contractual arrangement. As part of the agreement – And if you had not agreed to that, and the contract was otherwise in effect, and they had come into court, you would say, we don't want you to do that, and you can make that arrangement. That's not part of our contract. We would say that, but I think it's – You're right, because the FAR does not require it. But I think it's critical to recognize that Lockheed would say the FAR does require it and would ask for a judgment on that basis. And so our settlement of litigation risk still – Where did they say that in their brief? I missed it. It's actually – the best place to look would be the first page of the settlement agreement itself, which lays out the parties' respective theories about whether particular costs are allowable and allocable under the federal acquisition regulation. And I would just point out – That's not what's in dispute. The question is whether they're required under the FAR. And you're changing your theories. They're not required. I disagree. You wouldn't hesitate for one second if they didn't have this arrangement, and they came in and said, we're entitled to it. You would say, where? The FAR doesn't require us to do that. We're not going to do it. That's right. And you'd be very comfortable with that. Well, yes, but I don't – The only way they get it is because it's a contractual arrangement in which you agreed to it. Well, is that right, or would it be an interpretation of the FAR itself? This is the part that's confused me. I have thought, for example, 31.201-1 of the FAR says that the total cost of a contract is the sum of the direct and indirect costs allocable to the contract. And when it uses the word allocable, does that mean that they are entitled to allocate under the FAR, or does that mean something else, that the contract in every case has a separate set of agreements as to what's allocable and what's not? No, there's a standard set of rules about what's allocable. It's in the government cost accounting standards and in the FAR itself. And the Defense Contract Audit Agency applies those rules across all contracts. So in response to Judge Edwards' question, would they have any basis to claim these costs if we didn't have the settlement agreement, Lockheed certainly would say that they – No, I'm interested in your position. Right. The two district court judges missed it. I didn't see it in the brief, and I don't see it in the language of the FAR. We would say Lockheed would not have a right to see those costs. Right. The only way they got it is by contractual agreement. Right. But the contract is a settlement agreement that incorporates an interpretation of the FAR. And I'll give you one example from Lockheed's argument to try and illustrate this. They cited the provision of the Federal Acquisition Regulations that requires them to credit back costs to – sorry, to credit back a circular judgment to the United States. And so they say, pursuant to the credits clause of the Federal Acquisition Regulation, we credit that back to the United States. But it's the settlement agreement that contains an exactly similar provision, which Mr. Himelfar cited to you just a few minutes ago. So that obligation to credit a circular judgment back to the United States doesn't just arise pursuant to contract. It also arises pursuant to the FAR as the FAR is incorporated into the settlement agreement. There's one final point that I'm interested in making, and that is to reemphasize the statement that Mr. Himelfar made, that CERCLA wants responsible parties to pay for these cleanups. That's what the United States is arguing for here. We've paid more than our share of the cleanup costs, and Lockheed has paid less than our share of the cleanup – less than its share of the cleanup costs. In order for the responsible party to bear each responsible party's share of the cost of this site, it was inequitable for the district court to increase payments to Lockheed and have those payments come out of Lockheed. Well, I think he was saying that in the context of the question about where the contractors are both government contractors, and they're responsible 50-50 for the costs of cleanup under CERCLA. And then the government pays A's entire indirect costs, cleanup costs, both A's and B's. And then A tries to get, you know, under CERCLA get the United States to pay, and I take it on your reading of the statute they would not be able to. A would not be able to recover against B. Is that right? They would not be able to recover against other PRPs if the United States has already paid. So they would not be able to recover against a responsible party. Right, but the Federal Acquisition Regulation requires them to go after other CERCLA parties if they're charging response costs to the United States. It may require them to go against them, but the statute under your reading would not permit them to, right? Right. So what we would say is they're required to fulfill that obligation before they start charging the United States costs under contract. Is there something in the FAR that says the order in which things have to be done? They could file their lawsuit and immediately lose if we read the statute the way he wants to read it. They would only lose if the United States had already reimbursed those costs under contract. Right. Would the United States be able to slow up the reimbursement? Doesn't seem to be the case. It seems to be the case that it's done as we go by on the contract. As I stand here I can't think of any rule that would require them to seek CERCLA from other parties first except for the economic incentives that they themselves cite in their brief suggesting that it's better for their government customers to have lower contract prices and for them to be able to recover under CERCLA first. Well, their point is, I guess, different government agencies. If they get 100% from one government agency, they'll still be able to offer cheaper to another government agency. That's right, but it's still the same government that's paying, and that's a critical point here. The result of Lockheed's theory of how this should work is that the United States will end up paying more even if their particular individual agency clients pay less. That's not a theory that is designed to protect the United States. But it extends also to their non-government agency clients, right? Yes. So they're saying, please charge the United States more so that we can give both the United States and our other customers discounts. And that's not something that CERCLA requires. For that reason, the district court's judgment should be reversed. Thank you. I'll take the matter under submission. Thank you both.
judges: Garland, Pillard, Edwards